**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00084-HBB**

**LORIE THOMAS**                                                                    **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION[1]**                         **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

<u>BACKGROUND</u>

Before the Court is the complaint (DN 1) of Lorie Thomas ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 17) and Defendant (DN 23) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and that judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13).   By Order entered December 16, 2020 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1 Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

FINDINGS OF FACT

On January 22, 2018, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 16, 236-45).   Plaintiff alleged that she became disabled on January 20, 2018, as a result of type 2 diabetes, neurocardiogenic syncope, venous reflux disease/venous insufficiency, asthma, sleep apnea, thrombophilia, anxiety, depression, blood clots, and irritable bowel syndrome (Tr. 16, 132, 146, 260).   The application was denied at initially on May 18, 2018, and upon reconsideration on August 23, 2018 (Tr. 16, 131-44, 145-61).

Administrative Law Judge David Peeples ("ALJ") conducted a video hearing from Paducah, Kentucky (Tr. 16, 40).   Plaintiff and her counsel, Sara Martin Diaz, participated from Owensboro, Kentucky (Id.).   Lynn A. Jones, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated July 23, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-31).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 20, 2018, the alleged onset date (Tr. 18).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: neurocardiogenic syncope; venous reflux disease/insufficiency; asthma; thrombophilia, and obesity (Id.).   The ALJ also determined that Plaintiff has the following non-severe impairments: anxiety; depression; sleep apnea; diabetes mellitus-type 2; irritable bowel syndrome; insertional peroneus tendinitis of the right foot and plantar fasciitis of the left arch; and low back pain (Tr. 18-21).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 21).

2

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567(b), such that she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; she can stand and walk for six hours out of an eight-hour workday; she can sit for six hours out of an eight-hour workday; she can occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can frequently stoop; she can occasionally kneel and crouch; she can never crawl; and she would have to avoid concentrated exposure to pulmonary irritants (fumes, odors, dusts, gases, poor ventilation), and hazards (unprotected heights, moving mechanical parts) (Tr. 22).   The ALJ considered Plaintiff's RFC, testimony from the vocational expert, and found that Plaintiff is unable to perform her past relevant work as a Licensed Practical Nurse and Restorative Nurse because they are medium in exertional level (Tr. 28).

The ALJ proceeded to the fifth step where he found that Plaintiff is capable of performing other occupations with jobs existing in significant numbers in the national economy (Tr. 28-30). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 20, 2018, through the date of the decision (Tr. 31).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 235).   The Appeals Council denied Plaintiff's request for review (Tr. 1-5).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs.,

974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-696.

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

4

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than twelve (12)
> months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the RFC to return to his or her past relevant work?

5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

5

Prejudgment Remand

1.   Arguments of the Parties

Plaintiff argues that a prejudgment remand, pursuant to sentence six of 42 U.S.C. § 405(g), is appropriate because the Appeals Council disregarded "new" and "material" medical records submitted in support of Plaintiff's request for review of the ALJ's unfavorable decision (DN 17-1 PageID # 1182-83).   Specifically, Plaintiff is referring to treatment records from her cardiologist Dr. Vora, treatment records from her pulmonologist Dr. Dedaj, and a medical opinion from Dr. Dedaj (Id.) (citing Tr. 77-130).   Plaintiff claims this evidence is "new" because it concerns treatment she received immediately before and after the ALJ's hearing (Id.).   Plaintiff asserts that she did not have it in her possession when the ALJ issued his decision (Id.).   Plaintiff claims the evidence is "material" because it responds to the ALJ's comments about the lack of objective findings corroborating the severity of Plaintiff's subjective complaints (Id.).   Plaintiff also asserts that the evidence demonstrates progressively worsening conditions and symptoms (Id.).   While some of the evidence is post-hearing, Plaintiff argues that it relates to her ongoing symptoms for which she filed this claim and provides additional corroborative evidence that should have been remanded to the ALJ for consideration (Id.).

Defendant points out that the Appeals Council considered the evidence and concluded that some of it—medical records from April 2019 through July 2019—related to the period at issue but did not show a reasonable probability that it would change the outcome of the ALJ's decision (DN 23 PageID # 1213-15) (citing Tr. 2).   Additionally, the Appeals Council found that some of it—medical records from August 2019 through October 2019—did relate to the period at issue because it postdated the ALJ's decision (Id.).   Defendant asserts that Plaintiff has waived any

argument that the evidence is "material" because she has not even attempted to show how the additional evidence shows there is a reasonable probability that the Commissioner would have reached a different disposition if presented with this new evidence (Id.).

    2.   Applicable Law

"A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . ." Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006).   The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence six-remand)." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).

    Under sentence six of 42 U.S.C. § 405(g), the Court does not address the correctness of the administrative decision.   Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991), Hollon, 447 F.3d at 483. "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding."   Melkonyan, 501 U.S. at 98.   The party seeking this type of remand has the burden of demonstrating that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"   42 U.S.C. § 405(g); see also, Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174-175 (6th Cir. 1994).

The Supreme Court of the United States has explained that evidence is "new" only if it was "not in existence or available to the claimant at the time of *the administrative proceeding*." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); *see* Melkonyan, 501 U.S. at 98 (indicating that evidence is "new" if it was not available to the claimant at the time of the administrative proceeding).   The Sixth Circuit uses "administrative proceeding" and "hearing" interchangeably in its discussion of the applicable law.   *See e.g.* Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).   Thus, in assessing whether the evidence is new, the issue is whether the medical records existed or were available to Plaintiff at the time of the administrative hearing.

Evidence is "material" only if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Ferguson, 628 F.3d at 276; Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001); Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).   Notably, evidence is not considered material if it merely depicts an aggravation or deterioration in an existing condition.   Sizemore, 865 F.2d at 712.

"Good cause" is demonstrated by showing "a reasonable justification for *the failure to acquire and present the evidence for inclusion in the hearing* before the ALJ."   Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (emphasis added).   Clearly, this rule of law applies when the medical evidence is available at the time the ALJ conducts the administrative hearing.   The Sixth Circuit has also indicated that "good cause" is "shown if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability."   Koulizos v. Sec'y of Health & Human Servs., No. 85-1654, 1986 WL 17488,

8

at *2 (6th Cir. Aug. 19, 1986) (citing <u>Wilson v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1181

(6th Cir. 1984) and <u>Willis v. Sec'y of Health & Human Servs.</u>, 727 F.2d 551 (6th Cir. 1984)).

Thus, this rule of law also applies when the evidence is not available at the time the ALJ conducted

the administrative hearing.   For example, in <u>Wilson</u> the medical evidence concerned treatment the

claimant received months after the administrative hearing.   733 F.2d at 1182-83.

    3.   Discussion

    The Court will now address whether each piece of evidence is "new."   As explained

above, in assessing whether the evidence is new, the issue is whether it existed or was available to

Plaintiff at the time of the administrative hearing.   Here, the ALJ conducted the administrative

hearing on May 2, 2019 (Tr. 38).   The records (Tr. 80-90)[2] and medical opinion (Tr. 77) received

from Dr. Dedaj are "new" because they post-date the ALJ's hearing.   All but one of the records

received from Dr. Vora are "new" because they post-date the ALJ's hearing (Tr. 95-117, 119-

130).[3]   The sole document that predates the ALJ's hearing is not "new."[4]

---

2 Specifically, Dr. Dedaj provided a follow-up treatment note dated September 23, 2019 that was prepared by Kim Ann Harley, APRN, (Tr. 80-86); a radiology report prepared on the same date regarding a CT scan without contrast of Plaintiff's chest (Tr. 87-88); and a report addressing Plaintiff's CPAP compliance from August 24 through September 22, 2019 (Tr. 89-90).

3 Dr. Vora provided treatment note dated August 16, 2019 (Tr. 96-101); records memorializing telephone communications with Plaintiff from April 24 through September 18, 2019 (Tr. 102-118); an EKG on August 16 through (Tr. 119); a venous duplex study report dated August 2, 2019 (Tr. 120); a persantine myoview gated spect test report dated September 13, 2019 (Tr. 121); a holter report dated September 24, 2019 (Tr. 122); an echocardiogram on May 24, 2021 (Tr. 123); a heart catherization report dated July 18, 2019 (Tr. 124-25); and a carotid duplex study report dated September 18, 2019 (Tr. 126); and lab results dated October 10, 2019 (Tr. 127-30).

4 The record that pre-dates the ALJ's hearing was prepared by a nurse in Dr. Vora's office (Tr. 118).   It memorializes two telephone conversations with Plaintiff on April 24, 2019, concerning patient assistance from Pfizer for Plaintiff's Norpace prescription (<u>Id.</u>).

Next, the Court will address whether each piece of evidence is "material."   Plaintiff has made a general assertion that the evidence "demonstrates progressively worsening conditions and symptoms and objective findings" (DN 17-1 PageID # 1183).   Such a bare assertion is not sufficient to demonstrate there is a reasonable probability that the ALJ would have reached a different disposition of the disability claim if presented with the new evidence.   Moreover, as explained above, evidence is not considered "material" if it merely depicts an aggravation or deterioration in an existing condition.   Thus, Plaintiff has not demonstrated the "new" evidence is "material."   For this reason, she is not entitled to a pre-judgment remand pursuant to sentence six of 42 U.S.C. § 405(g).

### Finding No. 5

1.   Arguments of the Parties

Plaintiff raises two challenges to the ALJ's RFC determination (DN 17-1 PageID # 1178-82).   First, Plaintiff contends that the ALJ's assessment of medical opinions from her treating provider, Kim Harley, APRN, and the two non-examining State agency physicians is not supported by substantial evidence in the record and does not comport with applicable law (Id. at PageID # 1178-79) (citing 20 C.F.R. § 404.1527; Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529, 530 (6th Cir., 1996); Winfred v. Chater, 917 F. Supp. 398, 400 (E.D. Va., 1996)).   Next, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because evidence and testimony Plaintiff presented during the hearing—regarding her symptoms—shows she should have been limited to, at most, sedentary work (Id. at PageID # 1179-82).

Defendant argues the ALJ's RFC determination is supported by substantial evidence and comports with applicable law (DN 23 PageID # 1208-).   Defendant points out that Plaintiff relies

on outdated regulations to bolster her claim (Id. at PageID # 1208-11).   Defendant then explains why the ALJ reasonably evaluated the medical opinions under the applicable regulations (Id.) (citing 20 C.F.R § 404.1520c).   Defendant contends that the ALJ's RFC determination is supported by substantial evidence and comports with applicable law (Id. at PageID # 1211-13).

    2.   Applicable Law

    The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   Id. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the RFC finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations.   Id. §§ 404.1520c, 404.1529(a).   As Plaintiff filed her application after March 27, 2017, the new regulations for evaluating medical opinions are applicable to Plaintiff's case.   See id. § 404.1520c.

    The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[5]  in the record, even if it comes from a treating medical source.   Id. § 404.1520c(a).[6]

---

5 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. § 404.1513a(a)(1).   Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   Id. § 404.1513a(b)(1).

6 The language quoted above indicates that the new regulation has done away with the controlling weight rule in Id. § 404.1527(c)(2).

Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   Id. § 404.1520c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   Id. § 404.1520c(c)(1)-(5).[7]   Of these five factors, the two most important are supportability and consistency.   Id. § 404.1520c(a) and (b)(2).   Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   Id. § 404.1520c(b)(2).   Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   Id. § 404.1520c(b)(2).

In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings.   Id. § 404.1529; SSR 16-3p. A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.   20 C.F.R. § 404.1529(a).   In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First, the Administrative Law Judge

---

7 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. § 404.1520c(c)(3)(i)-(v).

must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. § 404.1529(c)(3).

3.   Discussion

Plaintiff's challenge to the ALJ's assessment of certain medical opinions in the record indicate she is relying on the rules in 20 C.F.R. § 404.1527.   But these rules do not apply to Plaintiff's case because she filed the application after March 27, 2017.   See Id. §§ 404.1520c, 404.1527.

Plaintiff takes issue with the ALJ's assessments of medical opinions expressed by her treating provider, Kim Harley, APRN, and the two non-examining State agency physicians.   In pertinent part, the ALJ's decision reads as follows:

> At the request of DDS, the claimant's records were reviewed by Samuel Sullivan, M.D., on April 2, 2018, and independently by P. Saranga, M.D., on August 19, 2018.   Both found the claimant's chronic venous insufficiency and thrombophilia to be severe but not her hypertension, diabetes mellitus, asthma, or sleep apnea.   Both also opined that the claimant is capable of light exertion, frequent climbing of ramps and stairs but no ladders, ropes, or scaffolds, and no concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards (including unprotected heights) (Exhibits lA; 3A).   The undersigned finds these opinions to be persuasive because they are consistent with the medical evidence of record

demonstrating normal or benign physical exams and imaging but also take into consideration the claimant's impairments which are accommodated with environmental limitations for safety precautions (Exhibits 4F/11; 6F/4; 7F/3-4;  I0F/6;  I IF/16-17; 12F/5; 13F/6; 14F/8; 16F/6).

. . .

On April 24, 2019, Kim Harley, APRN, completed a Physical Residual Functional Capacity Questionnaire in which she indicated that the claimant's depression, anxiety, and other psychological factors affect her physical condition, and opined that the claimant's "psychological factors are the limitation to working" but nonetheless assessed some physical limitations.   Nurse Harley also opined that the claimant's experience of pain or other symptoms are severe enough to interfere occasionally with attention and concentration needed to perform even simple work tasks, and is capable of low stress jobs as simple tasks would not affect her anxiety.   Nurse Harley opined that the claimant could walk about two city blocks without rest or severe pain, sit one hour at a time for a total of about two hours in an eight-hour working day, stand 20 minutes at a time for a total of about two hours in an eight-hour working day, lift and carry 10 pounds occasionally and less than 10 pounds frequently, and would need to walk around every 60 minutes for five minutes each time, shift positions at will from sitting, standing, or walking, and take one unscheduled break for 10 to 15 minutes during an eight-hour working day.   Nurse Harley further opined that the claimant can frequently look down, turn her head right or left, look up, and hold her head in a static position, occasionally twist, stoop, crouch or squat, and climb ladders and stairs.   Nurse Harley opined that the claimant's impairments are likely to produce "good days" and "bad days" and would likely be absent from work more than four days per month on the average as a result of the impairments or treatment (Exhibit  1 9F).

The undersigned finds Advanced Practice Registered Nurse Harley's opinion to be unpersuasive because it is excessively restrictive despite infrequent treatment.   Nurse Harley first saw the claimant in October 2017 but only sees the claimant every six months and as needed.   The record does not contain any supporting treatment records of Nurse Harley.   The claimant's only specific mental health treatment is found in exhibit 4F where the claimant was diagnosed with generalized anxiety disorder and treated with

14

> Lexapro and Xanax at The Women's Pavilion; Nurse Harley's
> opinion is not consistent with those records, which do not support
> any severe mental medically determinable impairments.
> Additionally, the physical limitations assessed by Nurse Harley are
> not consistent with her own finding of no clinical signs of pain noted
> in her extremities. The claimant also rose from the exam chair
> without difficulty and walked without gait disturbance (Exhibit
> l9F/I). Furthermore, it should also be noted that there is no
> mandatory disclosure statement submitted with exhibit 19F.

(Tr. 27-28).

The above discussion is consistent with the new regulations because the ALJ evaluated the "persuasiveness" of the medical opinions by utilizing the two most important factors, supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(a) and (b). Further, the ALJ explained how she considered the supportability and consistency factors in determining the persuasiveness of the above medical opinions. *See* id. §§ 404.1520c(b)(2). Contrary to Plaintiff's claim, the ALJ's assessments of the medical opinions from the State agency medical consultants and Nurse Harley are supported by substantial evidence in the record and comport with applicable law.

Next, Plaintiff contends the RFC determination is not supported by substantial evidence because the ALJ failed to appropriately consider Plaintiff's subjective statements about her symptoms. To the contrary, the ALJ accurately summarized Plaintiff's subjective statements regarding these conditions, the medical evidence related thereto, and medical opinions concerning these conditions (Tr. 18-28). *See* 20 C.F.R. § 404.1529; SSR 16-3p. The ALJ, in compliance with applicable law, examined the evidence in the record and determined that the objective medical evidence did not confirm that these conditions were of such severity that they can reasonably be expected to produce the pain and other symptoms claimed by Plaintiff (Id.). *See* Duncan v. Sec'y

15

of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).   Because the reported pain and other symptoms suggested impairments of greater severity than could be shown by the objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to assessing Plaintiff's pain and other symptoms (Id.).   *See* 20 C.F.R. § 404.1529(c)(3). For example, the ALJ considered Plaintiff's level of daily activity (Id.).   *See* id. § 404.1529(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990).   The ALJ also considered whether there were any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence in the record (Id.).   *See* 20 C.F.R. § 404.1529(c)(4).   The ALJ's conclusion—Plaintiff did not suffer symptoms to the extent she testified (Tr. 24)—is supported by substantial evidence and comports with the law.

In sum, the RFC set forth in Finding No. 5 is supported by substantial evidence in the record and comports with applicable law.   For the above reasons, Plaintiff is not entitled to relief regarding her challenges to the RFC in Finding No. 5.

## Finding Nos. 9 and 10

1.   Argument of the Parties

Plaintiff claims that the vocational expert's testimony does not provide substantial evidence to support the ALJ's determinations at step five because the vocational expert provided inaccurate information regarding Plaintiff's past relevant work and transferrable skills (DN 17-1 PageID # 1169-75).   Plaintiff asserts that the vocational expert incorrectly classified her work for a pulmonology practice as "Medical Assistant", Dictionary of Occupational Titles ("DOT") No. 079.362-010 (Id. at PageID # 1170-73) (citing Tr. 66-67, 68-71).   Plaintiff contends that her

16

testimony and the DOT indicate the work she performed at the pulmonology practice should have been classified as "Licensed Practical Nurse," DOT No. 079.374-014 (Id. at PageID # 1170-73) (citing Tr. 66-67, 68-71).  Plaintiff suggests that the vocational expert's job classification opinion—based on her experience and observations in the workplace—is outdated and unreliable because her resume does not indicate any actual practice, placement, or observation since 1999 (Id.) (citing Tr. 344).

Next, Plaintiff points out that in response to the second hypothetical question—which included the ability to change positions after 30 minutes of standing and one hour of sitting—the vocational expert testified that Plaintiff has transferrable skills to be a First Aid Attendant, DOT No. 354.677-010 with 40,000 jobs nationally, and a companion, DOT No. 309.677-010 with 60,000 jobs nationally (Id. at PageID # 1173-75) (citing Tr. 67-68).  Plaintiff contends the vocational expert's opinion—again based on her experience and observation because the DOT does not specifically address this—is unreliable because she has not done any actual observation, placement, or practice of these jobs since 1999 (Id.).  Plaintiff indicates that ONET, instead of providing an up to date job requirement information for the "First Aid Attendant", has created a more dynamic job category titled "Health Technologists and Technicians, All Other 29-2099.00" which would not allow for the positional changes in the second hypothetical question (Id.). Further, the ONET classifies "companion" as "Personal Care Aide 39-9021.11" but the tasks and skills are "completely different and far more dynamic than that described in the DOT" and would be more physically demanding and not allow for the positional changes in the second hypothetical question (Id.).

17

Plaintiff asserts, that at the end of the hearing, the ALJ granted her counsel's request to prepare a brief addressing concerns about the vocational expert's testimony but denied counsel's request to obtain an independent vocational report to specifically address those concerns (Id. at PageID # 1175-77). Plaintiff suggests that the ALJ's reasoning for denying the latter request was the mistaken belief that the new "5-day rule" in 20 C.F.R. § 404.935 required such a report to be prepared and submitted before the hearing (Id.). Plaintiff argues that this new rule applies only to evidence that existed at the time of the hearing and the claimant knew or should have known about (Id.) (citing 20 C.F.R § 404.1512). The circumstances here are distinguishable because a post-hearing vocational opinion is rebutting testimony heard for the first time during the hearing (Id.). Further, Plaintiff contends it is not feasible to adequately prepare for cross-examine of a vocational expert when he or she expresses the opinions for the first time during the hearing (Id.).

Defendant directs the Court to the record which undermines each of Plaintiff's arguments concerning the vocational expert's testimony (DN 23 PageID # 1201-08). First, the ALJ did not rely on the vocational expert's testimony—indicating Plaintiff's worked as a Medical Assistant at the pulmonology practice—because the ALJ found the job did "not constitute past relevant work as the claimant performed the job for less than one year" (Id. at PageID # 1201) (citing Tr. 30). In response to the next claim—the vocational expert's testimony was unreliable because her resume did not include relevant experience—Defendant points out that the resume also indicates for the past 32 years she has been a certified vocational rehabilitation counselor, providing a full range of vocational services including: labor market/wage reviews, transferable skills analysis, job analysis preparation, training plan development, job development, loss-earning capacity evaluations, work site assessments/ergonomics, and vocational testing (Id. at PageID # 1202-03)

18

(Tr. 344).   Further, the vocational expert testified that her testimony was based on "onsite job analyses" and that she had observed the jobs she testified about (Id. at PageID # 1203) (citing Tr. 67, 72-73).   Additionally, in response to Plaintiff's ONET argument, Defendant points out that through onsite job analysis the vocational expert confirmed the identified jobs are being performed in the current modern economy as described in the DOT (Id. at PageID # 1203-06) (citing Tr. 72-73).   Moreover, the ALJ made the inquiry required by SSR 00-4p and the vocational expert confirmed that her testimony was consistent with the DOT, in response to the ALJ's inquiry (Id. at PageID # 1205-06) (citing Tr. 73).   Therefore, the ALJ reasonably relied on the vocational expert's testimony in finding that Plaintiff could perform a significant number of jobs in the national economy (Id.).

Defendant also argues the ALJ did not erroneously deny Plaintiff the opportunity to contest the vocational expert's testimony (Id. at PageID # 1206-08).   Defendant points out that at the end of the hearing the ALJ gave Plaintiff leave to brief the vocational issues and left the record open for two weeks (Id.) (citing Tr. 73).   Further, the ALJ indicated while he was open to briefing, including using additional sources, he was not sure whether he would consider additional expert testimony (Id.) (citing Tr. 73-74).   By holding the record open for two weeks, the ALJ provided Plaintiff with the opportunity to submit whatever evidence she desired (Id.).   Defendant explains that under HALLEX I-2-7-20, the ALJ would have marked any post-hearing evidence submitted as an exhibit in the record (Id.).   Further, both the ALJ's comments and HALLEX I-2-7-20 make it clear that the ALJ was not preventing Plaintiff from submitting post-hearing evidence under the "five-day rule" (Id.).   Additionally, Defendant indicates while the ALJ considered Plaintiff's

objections, he reasonably concluded that the vocational expert had professional knowledge and experience in job placement and that her testimony was reliable (Id.) (citing Tr. 29-30, 347-57).

    2.  Applicable Law

    At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given her residual functional capacity, age, education, and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden.   20 C.F.R. § 404.1569; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181.   However, if a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert.   20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).   For example, if the claimant suffers from an exertional and a non-exertional impairment then the Grids may be used only as a framework to provide guidance for decision making.   20 C.F.R. § 404.1569a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan,

20

905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Human Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-529.

    3.  Discussion

    The Court will begin with Plaintiff's challenge to the vocational expert's classification of one of her past jobs as a Medical Assistant.   Plaintiff's counsel briefed the issue in a post-hearing brief (Tr. 347-351) and the ALJ addressed it in her decision (Tr. 29-30).   The ALJ decided this issue was "moot" because Plaintiff did not perform the job long enough to constitute past relevant work (Tr. 30).   Moreover, the ALJ did not rely on this disputed testimony in making the step five determination that Plaintiff is capable of performing other occupations existing in significant numbers in the national economy considering Plaintiff's age, education, work experience, RFC, and acquired work skills from her past relevant work that are transferable to these other occupations (Tr. 29-30).   In sum, Plaintiff is not entitled to relief based on her first claim.

    Next, Plaintiff contends that Finding No. 10 is based on an unreliable vocational opinion because the vocational expert relied on obsolete DOT job descriptions and her workplace experience and observations are outdated.[8]   The vocational expert's resume indicates she has contracted with the federal government to testify as a vocational expert in Social Security Disability hearings on vocational issues for the past 18 years (Tr. 344).   But it also indicates the vocational expert is a certified vocational rehabilitation counselor who, for 32 years, has provided a full range of vocational services including: labor market/wage reviews; transferable skills analysis; job analysis preparation; training plan development; job development; loss-earning

---

8 Specifically, Plaintiff is referring to the vocational expert's testimony about the First Aid Attendant, DOT No. 354.677-010, and Companion, DOT No. 309.677-010 (Tr. 68).

capacity evaluations; work site assessments/ergonomics and vocational testing (Id.).   Moreover,

during examination by the ALJ, the vocational expert confirmed that through "onsite job analyses"

she has been able to observe the jobs identified in her response to the hypothetical questions and

determine that the jobs are being performed in the current modern economy as described in the

DOT job descriptions (Tr. 67, 72-73).   The ALJ acknowledged this testimony by the vocational

expert and relied on it in overruling Plaintiff's objection that the job descriptions in the DOT are

obsolete and Plaintiff's assertion that the vocational expert's testimony was based on outdated

workplace experience and observations (Tr. 30).[9]   Moreover, the ALJ made the inquiry required

by SSR 00-4p and, in response to that inquiry, the vocational expert confirmed that her testimony

was consistent with the DOT (Tr. 73).   As the ALJ's findings are supported by substantial

evidence in the record and comport with applicable law, Plaintiff is not entitled to relief on these

claims.

Plaintiff also claims that the ALJ wrongfully denied her request to obtain an independent

vocational report to rebut the vocational expert's testimony on the above discussed issues.   The

relevant portion of the hearing transcript reads:

> ATTY:   Okay.   That is all I have, Judge.   Judge, I would ask for a
> two-week leave to provide a post-hearing vocational expert brief
> regarding these issues.   Also the transferability of skills, I've never
> had transferable skills for nurses outside of the industry specifics so
> I'd like the opportunity to address that testimony as well.
>
> ALJ:   Sure, I'll give you an opportunity to do that.
>
> . . .

---

9 The ALJ found that "[t]he vocational expert has professional knowledge and experience in job placement. Accordingly, the vocational expert's job information is found to be reliable."   (Tr. 30).

ALJ:  . . .  All right.  We'll leave the record open for two weeks. I'll let you -- you're going to brief this or you're just planning on submitting some other evidentiary?

ATTY:  I will brief it and consult another vocational expert, Judge, for a potential report.

ALJ:  If you're going to submit something else I'm -- I'll let you brief it but I'm not sure I'm going to consider additional expert testimony at this point.

ATTY:  Well, I didn't know it was going to be an issue until this moment.  I can't, you know, I don't even know if I could get one in two weeks but I'm going to definitely try.

ALJ:  Well, like I say, I don't mind you briefing it.  You can certainly --

ATTY:  Mm-hmm.

ALJ:  -- use your resources and tell me what you have.  You know, if we're going to have additional expert person come in then that person needs to be where that person can be questioned thoroughly by Olova (PHONETIC), so –

ATTY:  Mm-hmm.

ALJ:  I -- like I say, if you want to brief it that's fine.

ATTY:  Okay.

ALJ:  I'll be more than happy to let you do that.

ATTY:  Thank you, Judge.

(Tr. 72, 73-74).  In sum, the ALJ granted counsel's request to submit a post-hearing brief and, arguably, reserved ruling on counsel's request to present rebuttal expert evidence pending identification of the opinions.

23

Plaintiff's counsel timely submitted a post-hearing brief (Tr. 347-57).  It presents the above discussed issues and the claim that the ALJ wrongfully denied counsel's request to obtain an independent vocational report to rebut the vocational expert's testimony on those issues (Id.). As explained above, the ALJ's rulings on each of the above discussed issues is supported by substantial evidence in the record and comports with applicable law.  And, in the context of explaining the basis for those rulings, the ALJ provided a sound reason for concluding that a rebuttal expert opinion on each of the issues was not necessary (Tr. 29-30).  Additionally, that reason is supported by substantial evidence in the record and comports with applicable law. Moreover, nothing in the record substantiates Plaintiff's general assertion that the ALJ relied on the five-day rule in 20 C.F.R. § 404.935 as a basis for denying the request to present a rebuttal expert opinion.   In sum, Plaintiff is not entitled to relief based on her challenges to the ALJ's step five findings.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).  Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).  Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.  (Id.).  After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

September 2, 2021

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:       Counsel

25